WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James D Hamberlin, et al., | No. CV-18-03624-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Before the Court is Defendants' motion for summary judgment, which is fully briefed. (Docs. 69, 74, 75.) The Court heard oral argument on June 22, 2021 and thereafter took the matter under advisement. The Court will grant in part and deny in part Defendants' motion for the following reasons.

**I. Background**

On September 6, 2017, witnesses called the Arizona Game and Fish Department's ("AZGF") hotline to file a report (the "September Report"). (Doc. 70-4 at 6.) The witnesses described that Tim Downs, a hunting guide, had sought permission to fly over their land in the Superstition Mountains (the "Superstitions") in a paraplane. (*Id.*) Even though the witnesses denied Mr. Downs' request, they observed a yellow and orange paraplane overfly their property in August 2017 and on September 2 and 4, 2017. (*Id.*) They suspected the paraplane pilot to be Shane Koury, a hunting guide and associate of Mr. Downs, and believed that the paraplane was being used to locate bighorn sheep as part

of a hunt for an auction tag holder, Shane Rhoton, in violation of AZGF regulations.[1] (*Id*.) Mr. Rhoton's special hunting season opened when his hunting auction tag issued in late August 2017, but Mr. Rhoton did not actually begin the hunt until he arrived in Arizona and signed the auction tag on September 21, 2017. (Doc. 74-1 at 51.)

Officer Kriselle Colvin was tasked with investigating the allegations stemming from the September Report. (Doc. 69 at 4.) During her investigation, other informants reported seeing two individuals—a pilot and a passenger with a large camera—flying a paraplane while looking for bighorn sheep. (Doc. 70-4 at 6.) Officer Colvin grew to suspect Mr. Hamberlin's involvement because Mr. Hamberlin, a licensed hunter and friends with Mr. Downs, was known as an avid photographer of desert bighorn sheep and owned a registered paraplane matching the eyewitnesses' descriptions. (*Id*.) She searched his social media accounts and cell phone records and discovered that he had posted several photographs—which included his watermark—of bighorn sheep between August 22 and September 5, 2017 that she concluded could have been taken from the air.[2] (*Id*.)

On September 15, 2017, Officer Colvin obtained search warrants for the phone records of Mr. Koury, Mr. Downs, and Mr. Hamberlin. The resulting evidence demonstrated that Mr. Koury's cell phone had not been near the relevant site on the dates in question, leading Officer Colvin to conclude that Mr. Koury had not been flying to locate bighorn sheep in August and early September 2017, contrary to the September Report's indications. (*Id.* at 8.) Officer Colvin eliminated Mr. Koury as a suspect and continued her investigation of Mr. Hamberlin and Mr. Downs, noting that the records indicated that (1) Mr. Hamberlin's cell phone had been in the relevant area on the dates in question, (2) Mr. Hamberlin posted pictures of desert bighorn sheep that appeared to be taken from the air in August and September 2017, (3) Mr. Hamberlin and Mr. Downs communicated several times with each other on the dates that the witnesses reported seeing the paraplane, and (4) Mr. Hamberlin and Mr. Downs had communicated about a particular big horn sheep

---
[1] Particularly, it is unlawful for an individual to assist a special big game license tag possessor in locating wildlife with the aid of an aircraft during the special season or within 48 hours of the opening of the season. Ariz. Admin. Code R12-4-319.
[2] None of these photos were, in fact, taken from the air.

named Elvis, his location, and the logistics and timing of the hunt for him. (Doc. 70-4 at 7.)

On October 21, 2017, Mr. Rhoton shot and killed Elvis. (Doc. 70-6 at 10.) Soon after, Officer Colvin saw Mr. Hamberlin flying over the Superstitions in a paraplane like the one described in the September Report. (Doc. 70-4 at 7.) After Mr. Hamberlin landed, he and Officer Colvin spoke. Mr. Hamberlin confirmed that he took photos of bighorn sheep and had photographed Elvis with Mr. Downs when Elvis was successfully harvested by Mr. Rhoton. (*Id.*) During the conversation, he showed Officer Colvin pictures he had on his cell phone of Elvis and other desert bighorn sheep. (*Id*.) Also in November 2017, Officer Colvin received new reports from witnesses that the same paraplane flew in the Superstitions in October and November 2017 in a manner suggesting that the pilot was looking for desert bighorn sheep. (Doc. 70-4 at 7.)

Officer Colvin then sought three search warrants for Mr. Hamberlin's (1) person, home, vehicles, and paraplane; (2) mobile phone records; and (3) social media accounts. In support, she provided three virtually identical affidavits. (Doc. 70-4). In her affidavits, Officer Colvin failed to note that she cleared Mr. Koury as a suspect—despite including information about him stemming from the September Report—and did not disclose that Mr. Rhoton did not begin his hunt until September 21, 2017, even though the special hunting season opened in late August. Officer Colvin submitted her affidavits for review to supervisors and thereafter presented her sworn affidavits in support of search warrants to a Maricopa County Superior Court judge, who found that they contained probable cause to support the issuance of search warrants. Based on the information contained in Officer Colvin's affidavits, the Court issued the search warrants at issue. (*Id.* at 10; Doc. 70-8.) On November 21, 2017, Officer Colvin and other AZGF officers executed the search warrant of the Hamberlins' home, seizing valuable property. (*Id.* at 10-11.)

Mr. Hamberlin filed a motion to controvert the search warrant for his home, seeking the return of his seized property. (*Id.* at 11.) On July 9, 2018, the Maricopa County Superior Court granted the motion, ruling that the home search warrant was not supported

by probable cause and ordering the State to return the seized property.[3] (Doc. 70-11.) The Arizona Court of Appeals affirmed. *Hamberlin v. State by & through Arizona Game & Fish Dep't*, 465 P.3d 521 (Ariz. Ct. App. 2020).

On August 7, 2018, Plaintiffs filed suit against the State of Arizona and Officer Colvin in Maricopa County Superior Court. (Doc. 1-3.) Defendants removed the action to this Court on October 21, 2018. (Doc. 1.) Plaintiffs' complaint brings claims against both Defendants pursuant to 42 U.S.C. § 1983 for violations of their Fourth and Fourteenth Amendment rights. Particularly, they assert that Officer Colvin "violated the Fourth and Fourteenth Amendments when she used materially false and misleading information to obtain a search warrant for the Hamberlins' home and personal effects" and "Defendant State of Arizona contributed to and/or caused the violation of constitutional rights described above through its unconstitutional policies, practices, and procedures." (Doc. 1-3 at 12.) Plaintiffs' complaint also brings state law claims against the State of Arizona for invasion of privacy, conversion, trespass to chattels, trespass to land, negligence/gross negligence, and intentional infliction of emotional distress. On December 4, 2020, Defendants filed their motion for summary judgment, which is now ripe.

**II. Legal Standard**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[3] This Court found on July 23, 2019 that the state court probable cause ruling has preclusive effect as to the home search warrant, here. (Doc. 30.)

- 4 -

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

## III. Discussion

### A. Section 1983 Claims

Section 1983 creates a cause of action against a person who, acting under color of state law, violates the constitutional rights of another person. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal . . . constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Tobias v. Arteaga*, 996 F.3d 571, 579 (9th Cir. 2021) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). The Court may address either prong first, but both must be satisfied for a plaintiff to defeat qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants assert that they are entitled to qualified immunity on Plaintiffs' § 1983 claims, and the Court agrees.

Beginning with the clearly established prong, "[t]he Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *U.S. v. Jones*, 565 U.S. 400, 404 (2012). It is clearly established in the Ninth Circuit that, "if an officer submitted a [warrant] affidavit that contained statements [s]he knew to be false or would have known were false had [s]he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . [s]he cannot be said to have acted in an objectively reasonable manner,' and the shield of

qualified immunity is lost." *Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995) (quotations and citations omitted). "[A] plaintiff can only survive summary judgment on a defense claim of qualified immunity if the plaintiff can *both* establish a substantial showing of a deliberate falsehood or reckless disregard and establish that, without the dishonestly included or omitted information, the magistrate would not have issued the warrant." *Id.* at 789. "If a party makes a substantial showing of deception, the court must determine the materiality of the allegedly false statements or omissions." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (citing *KRL v. Moore*, 384 F.3d 1105, 117 (9th Cir. 2004).

The Court now assesses whether Plaintiffs have established the violation of this clearly established Fourth Amendment right. Here, Plaintiffs allege that Officer Colvin deceived the magistrate judge to secure a warrant, thereby violating their Fourth Amendment rights, by omitting two facts: (1) that she cleared Mr. Koury as a suspect and (2) that Mr. Rhoton did not begin his bighorn sheep hunt until September 21, 2017.[4] The Court will address each omission, in turn.

First, Plaintiffs allege Officer Colvin committed unconstitutional judicial deception by submitting affidavits that included information implicating Mr. Koury while failing to note that she had eliminated him as a suspect. Particularly, the affidavits explain that witnesses filed the September Report, contending that Mr. Koury was flying a powered parachute on September 2 and 4, 2017 and "was reported to be the guide service hired by the auction tag holder." (Doc. 70-4 at 5.) Even if evidence existed that Officer Colvin intentionally or recklessly neglected to note that Mr. Koury was not the individual that had flown a powered parachute on the relevant dates or that had been hired by Mr. Rhoton—which the Court does not decide, these omissions were not material to a probable cause finding and therefore cannot provide the basis for a Fourth Amendment judicial deception claim. Particularly, the Superior Court concluded that Officer Colvin's affidavit as to the

---

[4] Plaintiffs raised a third misrepresentation in their response—that Officer Colvin believed Mr. Hamberlin's Facebook photographs of bighorn sheep could have been taken from the air. However, counsel conceded at oral argument that Officer Colvin did not profess with certainty that Mr. Hamberlin's photographs were taken from the air and a claim of judicial deception cannot rest on "an officer's erroneous assumptions about the evidence [s]he has received." *Ewing*, 588 F.3d at 1224.

home warrant lacked probable cause because it was "based on suspicion that someone was engaged in prohibited activities . . . without any actual proof." (Doc. 70-11 at 4.) It did not find that the elimination of Mr. Koury as a suspect, specifically, eradicated probable cause that otherwise existed. (*Id*.) To the contrary, the Superior Court emphasized that the affidavit, in its original state, entirely failed to "establish a direct connection between Hamberlin and Shane Koury." (*Id*.) Importantly, the affidavits tied Mr. Hamberlin to the scheme based on his affiliation with Mr. Downs, not Mr. Koury.[5] The affidavits maintained one degree of separation between Mr. Hamberlin and Mr. Koury, and their link, Mr. Downs, remained a suspect at all times.

Moreover, in its order affirming the Superior Court, the Court of Appeals held, "activities on September 2 and September 4 were simply too remote in time from the October 21 hunt to support a probable cause finding that [Mr. Hamberlin] used his paraplane to assist Rhoton in locating and hunting Elvis." *Hamberlin*, 465 P.3d at 524. However, the affidavits only mention Mr. Koury in connection to dates in August 2017 and on September 2 and 4, 2017. Applying the Court of Appeals' logic, even if Mr. Koury had remained a suspect and the affidavit had directly tied Mr. Koury to Mr. Hamberlin, Mr. Koury's involvement, as laid out in the affidavits, could not support a probable cause finding. In sum, Officer Colvin's omission as to Mr. Koury's involvement was not material and Plaintiffs have therefore not established that Defendants violated their clearly established rights under the Fourth Amendment on this basis.

Second, Plaintiffs assert that Officer Colvin engaged in judicial deception to secure

---

[5] The affidavits tie Mr. Hamberlin to Mr. Downs, and thereby into the scheme, in the following manner. First, they describe that Mr. Downs contacted the initial reporting party to ask permission to cross their land via aircraft to scout for bighorn sheep. Then, they note the reporting party observed a yellow and orange paraplane—carrying a pilot and passenger wielding a large camera—fly over the property in August and on September 2 and 4, 2017. Next, they explain that Mr. Hamberlin was known to use a large camera and "to go out with Tim Downs to photograph bighorn sheep." Finally, the affidavits underscore that "[c]ell phone records obtained from a previous search warrant show that James Doyle Hamberlin and Tim Downs [were] closely associated and that they spoke to each other via cell phones on the mornings of September 2nd and 4th 2017." (Doc. 70-4 at 6-7.) The affidavits never mention any interaction or affiliation between Mr. Koury and Mr. Hamberlin such that Mr. Koury's elimination as a suspect would impact the evidence against Mr. Hamberlin.

warrants in violation of the Fourth Amendment by noting in her affidavits that the bighorn sheep auction tag was printed and issued on August 25, 2017 while omitting the fact that Mr. Rhoton did not arrive in Arizona and sign the tag until September 21, 2017. (Doc. 74-1 at 41, 51; Doc. 70-3 at 69-70.) Even if Plaintiffs had made a substantial showing of judicial deception, the fact that Mr. Rhoton did not sign his auction tag or arrive in Arizona until late September is not material. Under the relevant regulation, "[a] person who possesses a special big game license tag for a special season [] or a person who assists or will assist such a licensee shall not use an aircraft, including drones, to locate wildlife beginning 48 hours before and during a Commission-ordered special season." Ariz. Admin. Code R12-4-319. The special season opened on August 25, 2017, when Mr. Rhoton's tag issued.[6] Looking to its plain language, Mr. Hamberlin could violate the regulation by assisting Mr. Rhoton to locate bighorn sheep via aircraft during the season—by, for example, scouting for the herd in his paraplane and reporting his findings—even if Mr. Rhoton was not physically present in the paraplane or Arizona, itself. As a result, Plaintiffs have not established that Defendants violated their clearly established rights under the Fourth Amendment on this basis. Consequently, Defendants are entitled to qualified immunity on Plaintiffs' § 1983 claims and the Court will grant summary judgment in their favor on these claims.

**B. State Law Claims**

Plaintiffs also bring state law claims against the State of Arizona for invasion of privacy, conversion, trespass to chattels, trespass to land, negligence/gross negligence, and intentional infliction of emotional distress. Defendants assert that they are entitled to qualified immunity on all of Plaintiffs' state law claims, citing to *Spooner* in support of the far-reaching propositions that "[c]ommon law qualified immunity generally provides public officials, including police officers, limited protection from liability when

---

[6] Officer Colvin testified that, pursuant to Arizona hunting regulations, the special season began when the auction tag issued. (Doc. 74-1 at 51.) While Plaintiffs suggested at oral argument that the special season, instead, began when the auction tag was signed and became valid, they have produced no authority or evidence to support their contention that special seasons only begin when an auction tag is signed or when the tag possessor is physically present in Arizona.

performing an act that inherently requires judgment or discretion," "public policy mandates that investigative police work, performed in the scope of an officer's public duty, is a discretionary act subject to qualified immunity," and "[i]f qualified immunity applies, a public official performing a discretionary act within the scope of [her] public duties may be liable only if she knew or should have known that she was acting in violation of established law or acted in reckless disregard of whether h[er] activities would deprive another person of their rights." *Spooner v. City of Phoenix*, 435 P.3d 462, 466-67 (Ariz. Ct. App. 2018).

While *Spooner* adopts this broad language to describe immunity for police investigations, *Spooner* involved a case of mere negligence. This District has since construed *Spooner* as applying only to cases of simple negligence, as opposed to gross negligence. *Merritt v. Arizona*, 425 F. Supp. 1201 (D. Ariz. 2019). In addition, Defendants have proffered no authority, and the Court has found none, that has extended *Spooner* immunity to any of the state claims asserted here, other than Plaintiffs' claim for simple negligence. Therefore, the Court will deny Defendants' motion for summary judgment as to Plaintiffs' state law claims for invasion of privacy, conversion, trespass to chattels, trespass to land, gross negligence, and intentional infliction of emotional distress.

Turning to the remaining negligence claim, Plaintiffs must produce evidence that Officer Colvin knew or should have known that she was acting in violation of established law or acted in reckless disregard of whether her activities would deprive another person of their rights. In support of this claim, Plaintiffs state, "Officer Colvin knew that Koury had been eliminated as a suspect from the initial report. A reasonable officer would have known that failure to include this fact in an affidavit, while otherwise relying on the initial report, rendered the affidavit misleading and false." (Doc. 74 at 17-18.) The only established law that Plaintiffs allege Officer Colvin violated through this omission is their Fourth Amendment rights. As the Court explained when addressing Plaintiffs' § 1983 claims, Mr. Koury remaining a suspect was not material to a probable cause finding, and Officer Colvin's omission of the fact that he had been cleared did not violate Plaintiffs'

Fourth Amendment rights. Consequently, Defendants are entitled to qualified immunity on Plaintiffs' claim for simple negligence.

### C. Punitive Damages

In their complaint, Plaintiffs seek punitive damages "to the extent permitted by law." (Doc. 1-3 at 18.) At summary judgment, Defendants note that—should any state claims remain following summary judgment—the State of Arizona cannot be held liable for punitive damages pursuant to A.R.S. § 12-820.04, which shields public entities and public employees from punitive damages if the employee's conduct was within the scope of their employment. It is undisputed that Officer Colvin was working within the scope of her employment as an AZGF officer at all relevant times. Punitive damages are therefore inappropriate on the surviving claims. Plaintiffs are foreclosed from seeking punitive damages at trial.

### D. Attorneys' Fees

Finally, at summary judgment, Defendants attempt to dispose of Plaintiffs' request for attorneys' fees, as asserted in their complaint. Local Rule of Civil Procedure 54.2 sets forth the procedure for seeking attorneys' fees. Should Plaintiffs prevail on any of their remaining state law claims and wish to recover fees, they will be required to move for them in accordance with procedure. If there is no legal basis for fee-shifting, the Court will deny fees. But, at present it is premature to address this issue. Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 69) is **GRANTED IN PART** and **DENIED IN PART** as described herein.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment in favor of Officer Colvin and terminate her as a party.

Dated this 6th day of July, 2021.

Douglas L. Rayes
United States District Judge